# THOURON *v.* RAILWAY COMPANY.

## (*Knoxville.*  October 24, 1891.)

1. CONTRACT.  *Example of implied contract.*

   A made injunction bond for B on condition that he should be indemnified against loss by deposit of money in bank in his name until his liability should terminate.  A was a regular depositor with the bank, and was allowed interest on his deposits.  Upon termination of his liability A promptly paid over the principal fund, but withheld the interest allowed him by the bank on this deposit.  There was no express contract between A and B with respect to interest.  They were strangers, and A assumed liability on bond upon no consideration, unless it was the expected benefits to be derived from the deposit.

   *Held :* B cannot recover of A the interest allowed by the bank upon said deposit.

2. CLERK AND MASTER.  *Not liable for interest, when.*

   In such case there can be no recovery of the interest, although A was Clerk and Master of the Court in which B's suit was prosecuted, it appearing that A acted in good faith and at B's request, and that he did not hold said fund and receive interest thereon under order of the Court.

---

FROM KNOX.

---

Appeal from Chancery Court of Knox County. H. R. GIBSON, Ch.

INGERSOLL & PEYTON for Thouron.

39—6 P

Thouron *v.* Railway Company.

JAMES COMFORT, TULLY R. CORNICK, JR., and PICKLE & TURNER for W. L. Trent.

TURNEY, Ch. J.  In November, 1888, complainants procured from Chancellor Gibson a fiat for injunction on execution of bond in the sum of fifty thousand dollars, to be executed on or before December 18.  On the latter day one of the solicitors of complainants presented his affidavit asking "that the time · be extended to nine o'clock in the evening of December 21, or until a draft for fifty thousand dollars can come by mail from New York to the Clerk and Master of this Court." The Court ordered: "The Court is pleased to grant said motion, and to extend the time till twelve o'clock M. Tuesday, December 21, 1888, for complainants to file said bond, and if not filed at that date the fiat for injunction to become void."

When the time arrived the bond was still unmade, and, in the language of the special commissioner, Tillman, in his report, "the counsel of complainants, who was upon the ground, was much exercised and agitated by reason of the difficulties he found in his way and the importance of sustaining the order for the injunction, and urgently requested the Clerk and Master to aid him. The Clerk ágreed to make the bond, or have it made, and issue the injunction if complainants would deposit with him fifty thousand dollars as collateral or additional security. This was agreed upon, and the fifty thousand dollars were telegraphed to the

Third National Bank, of Knoxville, to the credit of W. L. Trent, Clerk and Master, and thereupon Mr. Trent procured two bondsmen or sureties for complainants (the sureties being men of small means), and accepted and filed the bond."

On the face of the bond, to the left of the names of the makers, is this indorsement: "I accept this bond, and have collaterals making it sufficient. W. A. Galbreath, D. C. M." On the rule docket is this entry: "1888. December 21. Inj. bond, $50,000.00. J. A. & F. W. Galbreath, security. Filed; and also $50,000.00 left with C. & M. as additional security."

There was no order of Court that Trent receive and hold the $50,000. On the minutes of November 29, 1890, is a recital "that a deposit of that sum had been made under order of Court as a fund for security for the prosecution of the injunction issued in the cause."

This minute was made on the day of the order to refund the $50,000, and after a settlement of the suit by agreement between the parties, and cannot be looked to to supply any matter absent from the record during the pendency of the cause. Mr. Trent had the usual arrangement with said bank, under which he received interest upon his deposits. He kept his bank account in his name as Clerk and Master.

This being a motion against the Clerk and Master for interest accruing on the funds deposited, must be determined by the facts under which the

deposit was made, and which have been recited.
The fund was never in the hands of the Clerk
and Master in a sense that would have authorized
the Court to declare it a fund under the control
of the Court; it was a deposit with him on the
faith of his integrity to hold it as a security,
and the accident of being Clerk and Master did
not impose upon him any further trust than to
have it forthcoming in its original amount at the
termination of the suit, to be applied to satisfac-
tion of such decree as might be rendered, which
he did by returning it to the depositors. So long
as the suit remained in Court, the depositors could
not have compelled him to return the money or
otherwise have interfered with his possession, ex-
cept by proceedings based on bad faith or insolv-
ency. The bondsmen and the defendants were the
parties mainly interested in the matter, knew the
conditions, and made no complaint; and, now that
their ends have been reached, complainants can
make none. They have received all they bargained
for—their money has been returned in full.

If the Clerk and Master has violated any rule
of his Court or any statute, that violation has
not been to the injury of complainants, and this
motion is not the mode by which such violation
can be punished. If the stake-holder had been
any other than Clerk and Master, we suppose
that this motion would not have been made. If
another, disconnected with the Court, could have
been selected by the parties to hold the funds,

with the single obligation to return it in kind at the end of the litigation, why may not the Clerk, who is more convenient to all concerned, be selected for the duty?

Mr. Trent, being responsible for the fund, could have kept it locked in his safe without profit to any one, or he could, without demanding interest, have deposited it in bank, where it would have yielded a profit to the bank. Then, with the risk of responsibility resting upon him, if he might have done these things, in what way have complainants been injured by his act in depositing in a good going bank and receiving for himself a part of the profits legitimately made by that bank?

Decree reversed, and motion discharged at complainants' cost.